WALLACE, JUDGE:
On September 19, 1978, claimant’s decedent, O’Dell M. Cecil, was driving a tractor trailer truck south on W.Va. Route 34 towards Hamlin, Lincoln County, West Virginia. The decedent was involved in an accident which resulted in his death. His widow, as ad-ministratrix of his estate, brings this wrongful death action in the amount of $500,000.00, based upon the respondent’s allegedly negligent maintenance of the berm along Route 34. Respondent alleges that the decedent’s negligence was the proximate cause of the accident.
Bobby H. Walden, a resident of Hamlin, West Virginia, was driving behind the decedent’s tractor trailer at the time of the accident. Mr. Walden stated that the decedent was travelling downhill into a right- *74 hand curve at approximately 45 mph; that the right rear wheels of the trailer dropped off the road and went into a depression or rut in the berm along the edge of the road. When the trailer came out of the rut, according to Mr. Walden, it jumped, the truck turned over, and slid across the road and down a hillside. Mr. Walden left his vehicle, climbed down 30 or 40 feet to the truck, and found Mr. Cecil, who was already dead.
Mr. Walden described Route 34 as a narrow, two-lane, blacktop road. He testified that the decedent had moved over towards the berm as an oncoming car passed by. Apparently, as the car was passing, the decedent’s truck was entering a curve. Mr. Walden described the curve.
“It’s a long, gradual inside curve and any normal driver, regardless of whether he’s driving a car or truck, has to get in there because you just can’t see all the traffic that’s going to meet you and you just have to get over there as a safety driver [sic] or what-have-you. It’s just normal driving, in other words, to not face a road you don’t know.”
James A. Kidd, an associate with Kidd Enterprises, Incorporated, which employed the decedent, visited the scene of the accident shortly after it occurred. Mr. Kidd measured the rut along the edge of the berm and found its deepest point was eighteen inches. The rut extended 60 to 70 feet along the road. Later examination of the truck revealed asphalt on the undercarriage of the truck which Mr. Kidd said corresponded with the “torn place in the asphalt where he went off the road.” Mr. Kidd stated that there were no warning signs or barrels in the vicinity of the accident.
Dennis Lynn Cecil, one of the decedent’s three sons, estimated that the berm had been in poor condition for “about a year” prior to his father’s accident. Mr. Cecil and Mr. Kidd both stated that the decedent had driven the tractor trailer truck before and was an experienced driver.
Larry Z. Adkins, maintenance supervisor for Lincoln County, West Virginia, from November 1977 until August 1978, testified that there was maintenance work performed on Route 34 during the time he held that position. He stated that his office “probably” received complaints about the berm on Route 34, but could not remember any specific instances of that happening. The following testimony was elicited:
“Q. And what would you call a deep rut 18 inches deep *75 along the side of the road about 30 feet long? Would you call that a — if you’re going to work on that, is that berm work or ditch line work?
A. Well, that would constitute both because the erosion has caused the ditch to move in next to the pavement.
Q. Would you consider that to be a major hazard for a road?
A. I sure would; one of the worst hazards.
Q. Why is it one of the worst hazards?
A. Well, if a vehicle drops off the pavement, then you can’t control it.
Q. And would you consider it, especially on that particular road, to be a dangerous problem on that hillside?
A. I would say — I can’t remember specifically ... I would say it’s more than possible that the shoulders were low on the hill because we didn’t have the men there on the equipment to take care of all the complaints but I can’t remember specifically if that was the case though.
Q. Would you consider 18 inches to be a little more than low?
A. Yes.”
The evidence in this claim establishes that a dangerous condition existed on the berm along Route 34 at the accident scene, and that this condition had been present for a long period of time. The berm or shoulder of the road must be maintained in a reasonably safe condition for use when the occasion requires, and liability may ensue when a motorist is forced onto the berm in an emergency or otherwise necessarily uses the berm of the highway. 39 Am.Jur. 2d “Highways, Streets, and Bridges” §488. This Court has held previously that a driver of a vehicle who must necessarily use the berm of a road may recover in those instances where the berm has not been maintained in a reasonably safe condition. Wood v. Dept. of Highways, 13 Ct.Cl. 305 (1980); Peters v. Dept. of Highways, 13 Ct.Cl. 325 (1980); Dunlap v. Dept. of Highways, 13 Ct.Cl. 285 (1980). In the instant claim, the testimony of the eyewitness indicated that the deceased was driving his vehicle down the hill into a curve at approximately 45 mph. To provide more passing room for a vehicle which was travelling in the opposite direction, he drove to the edge of the highway. In so doing, the wheels of the trailer left the road, and the accident occurred. The *76 evidence indicates that the respondent knew or should have known the condition of the berm.
The Court finds from the record that the respondent was negligent in its maintenance of the berm along Route 34 at the scene of the accident and further finds from the record that the decedent had knowledge of the road and the berm condition and was negligent in driving the tractor trailer at 45 mph down the hill into the curve. This negligence on the part of the decedent amounted to 10%, with 90% being attributable to the respondent.
The decedent, who was 57 years old at the time of his death, had been employed in his present job for a period of eight days and was being paid at the rate of $6.00 per hour. He previously had earned approximately $12,000.00 per year. At the time of his death, he lived with his wife, Stella Cecil, and three children, Kenton, age 22, Dennis, age 19, and Kim, age 14. He was the sole support of his family. The family apparently had a close relationship which was greatly affected by his death. The youngest child, Kim, has had considerable emotional problems affecting his school work and causing him to withdraw into himself. His mother attempted to seek employment after the death of her husband, but was unable to continue because it was necessary for her to remain at home to tend to the needs of her youngest son.
West Virginia Code §55-7-6 provides:
“in . . . action for wrongful death the jury may award such damages as it may seem fair and just, and may direct in what proportion they shall be distributed to the surviving spouse and children . . . .”
The Court realizes that all three of the children suffered from the loss of their father, but it also realizes that the record indicates that special consideration must be given to the youngest child.
The Court makes an award to the claimant in the amount of $150,000.00, less 10%, the resulting sum of $135,000.00, to be proportioned as herein set out, and in addition thereto, $2,328.25 for the funeral expenses.
1) To Stella Cecil, as Administratrix of the Estate of O’Dell Cecil, deceased - $135,000.00, proportioned as follows:
a) Stella Cecil $109,000.00
b) Kenton Cecil 3,000.00
c) Dennis Cecil 3,000.00
d) Kim Cecil 20,000.00
*77 The record establishes that Kim Cecil is under age, and the administratrix must distribute his share to his legally qualified guardian.
2) To Stella Cecil, as Administratrix of the Estate of O’Dell Cecil, deceased, the sum of $2,328.25, for funeral expenses.
Award of $137,328.25.